**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| T'LANI ROBINSON, ROBBY BROWN, DENNIS MAGANA, NICOLE VERSETTO, individually and on behalf of all others similarly situated, | Case No.: 1:16-cv-07447-MSS |
| *Plaintiff,* | |
| *v.* | |
| DEVRY EDUCATION GROUP, INC., a Delaware corporation, DEVRY UNIVERSITY, INC., a Delaware corporation, | |
| *Defendants.* | |

**PLAINTIFFS' FIRST AMENDED CLASS ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs T'Lani Robinson, Robby Brown, Dennis Magana, and Nicole Versetto, individually and on behalf of all other persons similarly situated (individually referred to herein as a "Plaintiff" and collectively as the "Plaintiffs"), by their undersigned attorneys, file this First Amended Class Action Complaint against DeVry Education Group Inc. ("DEG") and DeVry University, Inc. ("DVU") (collectively referred to as "Defendants" or "DeVry") to, without limitation, obtain a declaration that Defendants' actions were unlawful and obtain damages and restitution as further set forth below. Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and on information and belief as to all other matters, including, *inter alia*, investigation conducted by and through their attorneys.

## NATURE OF THE ACTION

1.     Defendants jointly operate the for-profit school, DeVry University. DeVry

provides hundreds of classes taught at locations throughout the country. Since at least 2008, Defendants have made numerous deceptive claims regarding their student employment and income statistics.  Specifically, Defendants claim that 90% their students actively seeking employment had careers in their fields of study within six months of graduation (the "90% Placement Claim").   Similarly, Defendants systematically represented that DeVry University graduates obtained jobs with significantly higher incomes than graduates of other colleges or universities (the "Higher Income Claims").

2.      Since at least December 28, 2011 Defendants have promised in their form enrollment agreement (the "Enrollment Agreement") that its advertising and information, and the 90% Placement Claim and Higher Income Claims, provided on Defendants' website, in their catalogs, and in advertisements and other materials published by Defendants was complete and accurate.  (*See* Exhibit A attached hereto).

3.      In early 2016, however, it was publically revealed that Defendants could not substantiate their 90% Placement Claim and Higher Income Claims. Unfortunately, tens of thousands of students and consumers reasonably relied on Defendants' 90% Placement and Higher Income Claims and enrolled in DeVry and borrowed billions of dollars of student loans to purchase educational services and products from Defendants, the value of which is substantially and materially less than was promised.

4.      These students and consumers, including Plaintiffs, have been injured by Defendants' false promises and deceptive marketing practices.  These students and consumers, including Plaintiffs, purchased Defendants' educational services and products in reliance on the truth and accuracy of Defendant's representations and promises, unaware that the 90% Placement Claim and Higher Income Claims were false and unsubstantiated.

5.      Accordingly, Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals, bring this lawsuit and seeks injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in the possession of Defendants.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (a) at least one member of the putative Class is a citizen of a state different from Defendants; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (c) the proposed Class consists of more than 100 Class Members; and (d) none of the exceptions under the subsection apply to this action.

7.      This Court has personal jurisdiction over Defendants because: (a) Defendants are registered to and conduct business in Illinois; and (b) have sufficient minimum contacts in Illinois, or otherwise intentionally avail themselves of the laws and protections of Illinois law through the promotion, sale, marketing, and distribution of its products and services, to render the exercise of jurisdiction by this Court proper and necessary.

8.      Venue is proper in this District under 28 U.S.C. § 1391 because: (a) Defendants have their principal place of business in this District; (b) Defendants regularly transact, solicit, and conduct substantial business in this District; and (c) a substantial part of the events or omissions giving rise to Plaintiffs' claims alleged herein occurred in this District.

9.      This Court has supplemental jurisdiction over the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, *et seq.* ("UDTPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.* (the "ICFA"), the Illinois Private Business and Vocation Schools Act, 105 ILCS 425/1, *et seq.* (the "VSA"), the California False Advertising Law,

Cal. Bus & Prof. Code § 17500, *et seq.* (the "FAL"), the California Unfair Competition Law, Cal.

Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), and other state statutory and common law claims

pursuant to 28 U.S.C. § 1367.

## PARTIES

10.     Plaintiff T'Lani Robinson is a natural person and citizen of the State of Georgia.

11.     Plaintiff Robby Brown is a natural person and citizen of the State of Missouri.

12.     Plaintiff Dennis Magana is a natural person and citizen of the State of

California.

13.     Plaintiff Nicole Versetto is a natural person and citizen of the State of Illinois.

14.     Defendant DEG is a corporation organized and existing under the laws of the

State of Delaware with its principal place of business located at 3005 Highland Parkway,

Downers Grove, Illinois. DEG transacts business throughout this District, the State of Illinois,

and across the United States. At all times material to this action, acting alone or in concert with

others, DEG has advertised, marketed, distributed, or sold educational products and services to

consumers and students in Illinois and nationwide, and with respect to the acts and practices of

DVU that are described herein: (a) dominated and controlled DVU's acts and practices; (b) knew

and approved of DVU's acts and practices; and (c) benefitted from DVU's acts and practices.[1]

---

[1] DEG's 2014 Form 10-K filed with the United States Securities and Exchange
Commission (the "2014 10-K") states that "'DeVry Group' refers to DeVry Education Group
Inc. alone or with its subsidiaries, as the context requires. When this report uses the words "we"
or "our," it refers to DeVry Group and its subsidiaries unless the context otherwise require."
Accordingly, individually and collectively DEG and DVU and any such other affiliated and
subsidiaries, acting alone or with each other, may be referred to herein as the singular "DeVry."
The 2014 10-K also states:

"DeVry Group's home office staff are located at offices in Downers Grove and Oak
Brook, Illinois. The home office staff of DeVry Group supports the employees for all of

15.     Defendant DVU is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3005 Highland Parkway, Downers Grove, Illinois. DVU is a subsidary of DEG. DVU transacts business throughout this District, the State of Illinois, and across the United States. At all times material to this action, acting alone or in concert with others, DVU advertised, marketed, distributed, or sold the educational products and services to consumers and students in the State of Illinois and throughout the United States.

16.     At all times mentioned in the causes of action alleged herein, each and every Defendant was acting in concert with, and/or was an agent and/or employee of each and every other Defendant. In performing the acts and/or omissions stated herein, each and every Defendant was acting within the course and scope of a common enterprise, and was acting with the consent and authorization of each of the remaining Defendants. All actions of each Defendant as alleged in the causes of action stated herein were ratified and approved by every other Defendant and/or its officers or managing agents.

## COMMON FACTUAL ALLEGATIONS

17.     DEG is a for-profit education company and has a market capitalization of over a billion dollars and total annual revenues approaching $2 billion.

18.     DEG owns and operates DVU. Together, as DeVry, they collectively comprise approximately 60 campuses in the United States and an online division that offers 10 certificate,

---

DeVry's educational programs and locations by providing a broad range of services. Among the centrally provided support services are curriculum development, academic management, licensing and accreditation, marketing and recruiting management, information technology, financial aid processing, regulatory compliance, audit services, legal, tax, payroll, and finance and accounting. Additionally, DeVry Group's online operations are located in offices in Chicago, Addison and Naperville, Illinois. Student finance administrative staff are also located in the Naperville facility."

diploma, and degree programs with over 30 concentrations in health care, business, and technology.

19.     Enrollment growth is critical to DeVry because of its high attrition rate. DeVry's 2014 graduation rate for the 2008 first-time, full-time entering class to which the graduation rate applies was only 32%. (*See* Exhibit B attached hereto).

20.     Enrollment growth is also critical because, like most publicly traded for-profit educational companies, it is a closely watched metric by Wall Street analysts. To meet revenue and profit expectations (and to continue to operate) DeVry must recruit and enroll as many students as possible.[2]

21.     To do this, DeVry spends hundreds of millions of dollars each year (*e.g.*, $264 million in 2015) advertising, marketing, recruiting, and promoting DeVry's job placement and post-graduate income claims. To that end, DeVry employs a large sales and recruiting staff to promote its "graduate outcome" claims through a variety of mediums.

22.     Defendants promised students in its form Enrollment Agreement that it's post-graduation information would be complete and accurate.  By it's own promises and material representations, DeVry's statements regarding employment and income rates are accurate, complete, and meant to be relied upon.

23.     Specifically, DeVry made the following promises in its Enrollment Agreement:

---

[2] Historically, DeVry has derived nearly 80% of its revenues from Title IV federal education funds, such as the Pell grant, Stafford loan, and Veterans Affairs education programs, which assist students in paying for higher education. According to the U.S. Department of Education, DeVry received more than $1 billion in taxpayer dollars through federal student aid in 2015. DeVry students cumulatively hold $8.3 billion in student debt – the fourth highest debt volume of any higher education institution in America – and have a 2009 five-year cohort default rate of 43%. This means that approximately $3.6 billion in revenues that DeVry received from students in the form of federal student loans is now either in forbearance or in default.

**Accurate Information Disclosure**

 DeVry publishes accurate information about its programs, policies, services, and graduate outcomes. Complete, accurate information is provided on our website, In [sic] our catalogs, and in advertisements and other materials published by DeVry.

**Career Services**

"DeVry's graduate employment statistics do not include graduates who do not actively participate in an employment search."

(*See* Exhibit A.)

**Defendants' 90% Placement and Higher Income Claims are Inaccurate and Misleading**

*Defendants' 90% Placement Claim*

24.     To recruit new students, DeVry made false, deceptive, and unfair claims about the job placement rates of its graduates, including without limitation in its 90% Placement Claim that 90% of DeVry graduates who were actively seeking employment had obtained jobs in their field of study within six months of graduation.  (*See* Exhibit C attached hereto). [3]

25.     In addition to its 90% Placement Claim, DeVry also advertised that its

---

[3] On January 27, 2016, the Federal Trade Commission ("FTC") filed a civil complaint (the "FTC Lawsuit") against DeVry in the United States District Court for the Central District of California alleging that certain of DeVry's 90% Placement and Higher Income Claims were false, deceptive, unfair, misleading, unsubstantiated, and illegal at the time they were made in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), as amended (the "FTC Act"). The 90% Placement and Higher Income Claims at issue relate to DeVry graduates' employment rates and earnings relative to graduates of other colleges and universities. (*See* Exhibit E attached hereto). Also, on January 27, 2016, DeVry received a Notice of Intent to Limit from the Department of Education ("DOE") Office of Federal Student Aid (the "January 2016 Notice"), based on a portion of its pending August 28, 2015 inquiry, informing DeVry of the DOE's intention to impose certain limitations on the participation of DeVry in programs authorized pursuant to Title IV. The proposed limitations relate to representations in advertising and marketing, regarding the post-graduation employment outcomes of DVU students over a period from 1975 to October 1980. On March 14, 2016 the Department of Veterans Affairs (the "VA") suspended DeVry from participation in a program that identifies schools doing a good job of serving former troops in light of the FTC Lawsuit accusing the for-profit chain of misleading consumers about the employment and earnings of its graduates in advertisements.

7

Bachelor's Degree Management Program had a 6-month graduate placement rate of 97%. (*See* Exhibit C). Yet, the true gainful employment rate and graduate employment statistic for the 2014 Bachelor's Degree Management Program is just 20%. (*See* Exhibit D attached hereto).

26.     DeVry also advertised that its 2009 Network Systems Administration graduates, an Associate Degree program, had a 6-month graduate placement rate of 88%. (*See* Exhibit C). The true gainful employment rate and graduate employment statistic published on or about June 9, 2016 for the Kansas City Network Systems Administration Program is just 27%. (*See* Exhibit D).

27.     DeVry's 2014 graduation rate was between 32% and 41%. (*See* Exhibit B). Thus, DeVry conceals that the actual likelihood that a student will graduate from the Bachelor's Degree Management Program and thereafter land a job in his or her field within six months of graduation is, at best, just 8.2%. The true statistics for DeVry's overall and other program graduate outcomes are similarly dismal, rendering DeVry's promotional and advertising statements false and misleading.

28.     To substantiate their promotional and advertising claims, Defendants use information they obtain from students about their majors, graduation dates, their employment, and DeVry's classifications of their employment status and from other third parties. Defendants used and manipulated these records to calculate the 90% Placement Claim.

29.     The data, records, and information used by Defendants to make the 90% Placement Claim do not provide a reasonable basis that substantiates Defendants' claims. Defendants improperly counted a substantial number of DeVry graduates as having been placed successfully (*e.g.*, those who were employed when they enrolled and who never actively participated in an employment search). Similarly, Defendants excluded a substantial number of

graduates in the pool of those actively seeking employment who should not have been excluded. For example, Defendants count graduates who did not obtain a job as a result of obtaining a degree from DeVry, and include DeVry graduates who after graduation continued with the same job they had when they enrolled in DeVry.

30.     Defendants also unreasonably count jobs that employers, industry experts, graduates, and consumers would not reasonably consider to be in the graduate's field of study and exclude students as "inactive" who were in fact seeking jobs (*i.e.*, reviewing jobs in the DeVry database, attending job interviews, attending DeVry career fairs, actively applying for positions, and actively following up with prospective employers). The actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is in fact significantly and materially smaller than 90%.[4]

**_Defendants' Higher Income Claims_**

31.     DeVry has also made false, deceptive, and unfair Higher Income Claims about the median income levels of its graduates. Defendants have made these claims repeatedly and in a systematic manner since at least 2008. Defendants have made the material representation that

---

[4] Many of the graduates themselves do not consider themselves as employed in their field of study when reporting to DeVry, but Defendants misrepresent them as employed in their field, including without limitation in the class of 2012: (1) graduates with degrees in technical management who were working as (a) a rural mail carrier (human resources concentration); (b) a yard salesman at a nursery (business information systems concentration); (c) a sales associate at Macy's (general technical concentration); (d) a driver delivering rain gutters for a construction services company; (e) a data entry specialist for a radio station (human resources concentration); and (f) unpaid volunteers at medical centers (human resources management and health services management concentrations); (2) a graduate with a degree in business administration (health services management concentration) working as a server at the Cheesecake Factory; (3) a graduate with a degree in business administration (health care management concentration) working as a car salesman; (4) a graduate with a degree in business administration (accounting concentration) working as a secretary at a prison; and (5) graduates with various degrees working as customer service representatives.

seeking an education at DeVry statistically results in higher incomes than comparative programs.

32.     Since at least 2008 DeVry has published in a systematic manner alongside their 90% Placement Claim an average reported annual compensation statistic for students who graduated (*See* Exhibits C and E).

33.     In using and manipulating false graduate outcome information to make their 90% Placement Claim, Defendants also falsely misrepresented and artificially inflated the average annual compensation of its graduates by:  (a) improperly counting a substantial number of DeVry graduates as having been placed successfully (*e.g.*, those who were employed when they enrolled, who never actively participated in an employment search, and who generally earn more than graduates who accept employment after graduation); (b) improperly excluding a substantial number of graduates in the pool of those actively seeking employment, who should not have been excluded, and who had zero income from education-related positions; (c) improperly counting graduates who did not obtain a job as a result of obtaining a degree from DeVry; and (d) improperly including DeVry graduates who after graduation continued with the same job they had when they enrolled in DeVry and who generally earn more than graduates who accept employment after graduation.  (*See* Exhibits C and E).

34.     Defendants also falsely represented that its graduates could earn more than four-year college students starting their careers and earn a salary while students at 4-year schools are still paying tuition.  The true facts are that DeVry students do not earn more one year after graduation than four-year college students do in the same one-year after they graduate. (*See* Exhibit C).

35.     In addition, Defendants publically represented that, one year after graduation, its bachelor's degree students on average earn 15% more than graduates from other colleges and

universities. (*See* Exhibits C and E).

36.     In order to further bolster their deceptive Higher Income Claims, in 2012 Defendants hired a third party company to obtain income data from students who had graduated from DeVry and other schools in 2010. DeVry then used and manipulated the data for marketing purposes. In using the Higher Income Claims in its advertisements and sales pitches, DeVry knew, or should have known, the reliability of the conclusions and information contained in the income report was contradicted by its own data. For instance, the third-party information did not account or adjust for material differences in age, experience, and field of study.

37.     Further, DeVry's own income statistics that it routinely collected annually and directly from thousands of its own graduates materially differed from the third party report, which consisted of a sample size of only several hundred individuals per year. As such, DeVry was on notice that the third-party data was not reliable or representative. And Defendants knew or should have known the conclusions and information contained in the income report were false because the methods and methodology of the survey that underlay the income report were questionable.

38.     Due to the flaws in the third-party survey, Defendants' reliance on the third-party data for its Higher Income Claims were unreasonable and Defendants knew or should have known that their Higher Income Claims and representations were false and unreliable. Indeed, based upon internal and external data, DeVry knew that its graduates did not in fact earn significantly more than graduates from all other schools combined.

**Defendants Widely Disseminated the 90% Placement and High Income Claims**

39.     Since at least 2008, DeVry has represented, expressly or by implication, in television commercials, on its websites, in telephone and face to face sales pitches with prospective

students, in brochures and print advertisements, in social media advertisements, in radio ads, and in other advertising and promotional materials two specific claims: (a) as a result of obtaining a DeVry degree, 90% of its graduates, from a specific year (*e.g.*, 2012) or during a specific period (*e.g.*, since 1975 or "for more than 30 years") who were actively seeking employment obtained a new job in their field of study within six months of graduation; and (b) DeVry's graduates earn more than graduates from other colleges and universities as a result of obtaining their degree from DeVry.

### *Defendants Engaged in False Advertising via the Internet, Print Media, Television, and Radio*

40.     Since at least 2008, Defendants have made their 90% Placement Claim in numerous television advertisements in both English and Spanish. These advertisements have run on national broadcast, satellite, and cable channels and stations and some have run on DeVry's YouTube channel.

41.     Defendants' statements, made verbally and/or in writing, included: (a) "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months."; (b) "90% of our grads actively seeking employment had careers in 6 months."; (c) "Join the 90%. Learn how at devry.edu."; (d) "The offer letter. If you're going to college, or back to college, that's your bull's-eye. It is for DeVry University students. In fact, for more than thirty years, 90% of all graduates in the active job market had careers in their fields within six months. 90%."; (e) "This is the guy ready for a great career in technology. 90% of our grads actively seeking employment had careers in 6 months."; and (f) "90% of DeVry University grads actively seeking employment had careers in their field in six months. Learn how at devry.edu."

42.     Since at least 2008, Defendants have made their 90% Placement Claim and Higher Income Claims on various DeVry webpages, including without limitation on the DeVry

12

website, at www.devry.edu.

43.     Examples of the claims made on such webpages include:

- "Excellent employment results. Nobody wants to go to college and just be a number . . . unless they're numbers like these. Each year, thousands of our grads find themselves right where they want to be – employed in their fields of study.";

- "**Do DeVry University graduates get good jobs?** Employers want DeVry University graduates. More than 90% of our new graduates quickly land jobs in their fields of study within six months of graduation (learn more). This is a true testament to the fact that DeVry University teaches what companies are looking for. . . . DeVry University graduates leave school well-prepared to enter the workforce and begin contributing immediately."; and

- "**Outstanding Career Services** - In addition to a relevant education and a highly respected degree, DeVry University offers invaluable career services that have helped thousands of students begin rewarding careers in their fields. The proof is the numbers. Since 1975, 265,869 undergraduate students have graduated from DeVry and 90% of those in the active job market were employed in career related positions within six months of graduation."

44.     Defendants have also disseminated promotional representations through DeVry's public Twitter page at twitter.com/DeVryUniv including, but not limited to, the following: (a) "For over 30 years, 90% of all DeVry graduates in the active job market had careers in their fields within six months: http://bit.ly/hyYns [September 14, 2009]; and (b) "90% of #DeVry grads active in the job market find employment in their field of study within 6 months. @DeVryUniv president Dave Pauldine." [July 29, 2013].

45.     Defendants have made similar 90% Placement Claims in print advertisements, handouts to prospective students, brochures, and academic catalogs. In the 2008-2009 DeVry Academic Catalog, DVU President David J. Pauldine represented:

" . . . since 1975, DeVry has graduated more than 230,000 students at the undergraduate level. Of graduates in the active job market, 90 percent were employed in career-related positions within six months of graduation. It's no

13

wonder we say with conviction that at DeVry, we major in careers."

In the 2009-2010 DeVry Academic Catalog, Mr. Pauldine represented:

> "For over 30 years, of DeVry graduates in the active job market or already employed, 90 percent have enjoyed careers in their field of study within six months of graduation."

### *Defendants Engaged in False Advertisement Via Internal Sales Pitches and Slide Shows*

46.     DeVry's marketing and sales involves both inbound and outbound campaigns. DeVry's inbound campaign involves disseminating promotional and advertising materials to generate phone calls to DeVry from prospective students, while DeVry's outbound campaign involves DeVry sales personnel making "cold" calls and lead generated calls to prospective students.

47.     Through either method, prospective DeVry students typically have multiple conversations with DeVry sales representatives that follow set and predetermined scripts. During the course of these phone calls, Defendants make statements and representations as set forth herein to induce prospective students to enroll for a DeVry education program.

48.     Since at least 2013, DeVry's sales staff have been trained to inform prospective students via written scripts that "The DeVry University difference includes outstanding career outcomes—In 2012, 90% of DeVry University grads actively seeking employment had careers in their field within six months of graduation."

49.     Prospects are invited to one or more interviews that take place either in person on a DeVry campus or by telephone. Prospective students who are interested in attending a DeVry campus are invited to take a tour followed by an interview with a DeVry "Admissions Advisor." Likewise, prospective students for an online degree are invited to have one or more telephonic interviews with an Admissions Advisor.

14

50.     Although titled "Admissions Advisors" (or "enrollment advisors," "financial advisors," or "enrollment counselors") an internal document makes clear the job function of these DeVry employees: "This is a sales position." As one salesman (who was told to represent himself as a "military adviser" to veterans) said, it was critical to get "asses in classes."

51.     During the campus tour, some prospects, like Plaintiff Robinson, are fed lunch, shown a graduation uniform, or photos of a mock graduation are taken with the prospects wearing the graduation uniform. For the interview stage of the sales pitch, Defendants have provided the Admissions Advisors and salespeople with a training guide, scripts, and other guidelines instructing the Admissions Advisor on how to pitch the prospect. DeVry Admissions Advisors are also armed with a PowerPoint slide presentation to use during the interview. When the interview takes place by telephone, the prospective student may be directed to a website that allows the prospect to go through a slide presentation with the Admissions Advisor.

52.     DeVry's Admissions Advisors represent during the interviews with prospective students that one of the benefits of obtaining a DeVry degree is that, as a result of attaining that degree, 90% of DeVry graduates obtain jobs in their field soon after graduating. The training guide and scripts instruct the Admissions Advisor to tell the prospect, "[a]s a result of these types of career assistance our graduates have shown excellent career results, let's take a look at those." The prospective student is then immediately shown a slide on DeVry's website entitled "Excellent Employment Results."

53.     This slide includes, without limitation, the following text: "In 2012, 90% of DeVry University graduates from all programs who actively sought employment had careers in their field of study within six months of graduation. Within that same population: 83% of

associate degree graduates had careers in their field – 92% of bachelor's degree grads had careers in their field."

54.     The Admissions Advisors are instructed to "[r]ead the career statistics on the screen verbatim" and to click a link to access "employment statistics." If the interview is conducted in person, the Admissions Advisor provides a paper copy of this information to the prospect.

55.     DeVry Admissions Advisors are told to respond to employment assistance questions from the prospect with a statement that, "DeVry offers career services that include assistance with job searches, resume preparation, practice interviews, career fairs, etc. These services are very successful, as evidenced by our employment statistics."

56.     The Admissions Advisors are also instructed to represent to prospects that one year after graduation, DeVry University grads report earning more than the median earning reported by all other graduates, including the claim that those earning bachelor's degrees would earn 15% more than their peers. DeVry Admissions Advisors are also instructed to ask prospects, "How do you think having a 15% higher median earning helped those students?"

### *DeVry Executives Made False Statements*

57.     In addition to the misrepresentations made by DVU President Dave Pauldine, in DEG's August 8, 2013 fourth quarter 2013 earnings call DEG Chief Executive Office Daniel Hamburger stated without qualification:

> "A recent Gallup poll found that the factor adult Americans say is most important in selecting a college is the percent of graduates who find a good job. And this is what DeVry University does. *The latest numbers are in, and DeVry University's employment statistics increased more than 90%. 90% of our graduates in the active job market are employed in their field of study within 6 months of graduation, and they're earning an average of over $43,500.* That's higher than the median family household income of our students before they enrolled at DeVry University." [Emphasis added].

16

58.     Similarly, the core focus of DeVry's 90% Placement Claim and Higher Income Claims is demonstrated in a "Letter to Shareholders" addressed to "Fellow Owners, Students, Colleagues, and Friends" written on or about August 29, 2013, wherein DEG Chief Executive Officer Hamburger stated:

> "The best measure of our quality is the successful outcomes that our students achieve. Notably, 90 percent of DeVry University's 2012 graduates active in the job market were employed in their fields of study within six months of graduation, earning an average of more than $43,500 annually."

And,

> "PayScale recently validated the ROEI [return on educational investment] of DeVry University, ranking three campuses in the top 100 list of PayScale's annual College Return on Investment Report."

59.     Similarly, the core focus of DeVry's 90% Placement Claim and Higher Income Claims is also demonstrated in its 10-K filing with the SEC for its fiscal year ending June 30, 2013, where DeVry stated,

> "DeVry University's highly integrated brand initiative *focuses on the university's graduate employment success,* while emphasizing DeVry University as an accredited, highly-respected academic institution. The brand campaign is grounded in ongoing in-depth consumer, marketplace and brand research, and leverages a number of channels, including broadcast, print and Internet advertising, public relations, and social media, as well as local marketing efforts." [Emphasis added].

60.     DeVry went on to represent:

> "One measure of success is the employment outcomes of DeVry University graduates. Each year, thousands of DeVry University graduates have started careers in their chosen fields within 6 months or less of their graduation. Ninety percent of DeVry University's calendar 2012 graduates in the active job market were employed in their fields of study within six months of graduation at an average salary of $43,539. These statistics include graduates of associate and bachelor's degree programs and those who were already employed in their field of study."

## PLAINTIFF ROBINSON'S EXPERIENCE

61.     Plaintiff T'Lani Robinson is a resident of Decatur, Georgia. Since at least

17

2010, Plaintiff had seen DeVry's television ads touting their 90% Placement and Higher Income Claims. In or around the first quarter 2013, Plaintiff received a cold call from a DeVry sales representative reciting the sales pitch touting DeVry's 90% Placement and Higher Income Claims, and inviting her to attend a tour of the Decatur, Georgia DeVry campus. Plaintiff went to DeVry's website where, in addition to the ads she had seen on television and the representations made to her in the cold call, she was shown the 90% Placement and Higher Income Claims, in writing. Plaintiff was attending Georgia Perimeter College at the time she received the cold call.

62.    In or around the second quarter of 2013, Plaintiff was invited to and attended an in-person tour of the Decatur, Georgia DeVry campus where she was fed lunch, shown the graduation uniform, had pictures taken of her in a mock graduation with other touring prospects, and met with Admissions Advisor Richard Wiggins who gave her a sales pitch and a computer presentation. The sales pitch and computer presentation reiterated verbally, on screen, and in writing the 90% Placement and Higher Income Claims.

63.    After the tour and initial interview, Plaintiff Robinson was mailed brochures and given student resource guides which contained the 90% Placement and Higher Income Claims. Thereafter, Plaintiff also had numerous (at least another three) phone calls with a DeVry Admissions Advisor and/or other sales representatives, including Alexia Derizzio, as well as at least one additional interview at the Decatur campus.

64.    Mr. Wiggins, Ms. Derizzio, and the other DeVry representatives repeated the 90% Placement and Higher Income Claims and assured Plaintiff Robinson the higher cost of the education program would be paid for by grants, scholarships, and financial aid. Plaintiff Robinson was told during a meeting with a DeVry representative that she should nonetheless

18

apply for a loan, just so she would get accepted and admitted to DeVry.

66.    Plaintiff Robinson left Georgia Perimeter and enrolled online with DeVry. Plaintiff and DeVry entered into the Enrollment Agreement wherein DeVry promised that its advertising and information and the 90% Placement and Higher Income Claims were complete and accurate. Plaintiff Robinson attended the DeVry Decatur campus and used the DeVry website in 2013, ultimately spending more than $17,000 on her DeVry education program, comprised of a $12,000 Parent Plus loan that was paid directly to and converted by DeVry for its own use and $5,000 in other expenses.

**PLAINTIFF BROWN'S EXPERIENCE**

66.    Plaintiff Robby Brown is a resident of Kearney, Missouri. Since at least 2010, Plaintiff had seen DeVry's television ads and heard DeVry's radio ads touting their 90% Placement and Higher Income Claims. In or around the first and second quarters of 2010, Plaintiff Brown received several telephone calls with DeVry wherein the sales person recited a sales pitch touting DeVry's 90% Placement and Higher Income Claims.

67.    Plaintiff Brown went to DeVry's website where, in addition to the ads he had seen on television and heard on the radio, and the representations made to him in the phone calls, he viewed the 90% Placement and Higher Income Claims in writing. Plaintiff was also mailed brochures and other promotional material containing the 90% Placement and Higher Income Claims. At the time, Plaintiff was starting the enrollment process to attend Centric College.

68.    In or around the second quarter of 2010, Plaintiff Brown spoke on the telephone several times (at least five to eight times) with one or more DeVry "Financial Advisors," including without limitation Dale Masteas and Chris Dunlap, who repeated the

90% Placement and Higher Income Claims and assured him not to worry about the higher cost of the education program because it was superior to an education from Centric and would be "all covered by grants."

69.     On or about May 21, 2010, Plaintiff Brown met in person with Admissions Advisor Chris Dunlap who gave him a sales pitch, brochures, and a computer presentation. The sales pitch, written materials, and computer presentation reiterated verbally, on screen, and in writing the 90% Placement and Higher Income Claims. Between May 2010 and October 2010, Plaintiff Brown also met in person with Dale Masteas and other DeVry representatives who repeated the 90% Placement and Higher Income Claims.

70.     Plaintiff Brown subsequently stopped the enrollment process at Centric and enrolled at DeVry. Plaintiff and DeVry entered into an enrollment agreement online with DeVry and he attended DeVry at both of its Kansas City locations commencing in June 2010 and used the DeVry website. Plaintiff Brown paid DeVry approximately $16,579 in tuition comprised of student loans which were paid directly to and converted by DeVry for its own use, plus interest, and paid for other DeVry education program related expenses such as books and supplies.

### PLAINTIFF MAGANA'S EXPERIENCE

71.     Plaintiff Dennis Magana is a resident of Needles, California. Since at least 2009, Plaintiff Magana viewed DeVry's television ads and heard DeVry's radio ads touting its 90% Placement and Higher Income Claims. In or around the third quarter of 2009, Plaintiff Magana had several face to face meetings and telephone calls with DeVry sales people wherein they recited the sales pitch touting DeVry's 90% Placement and Higher Income Claims.

72.     In or around September 2009, DeVry "recruiters" presented a slide show and

handed out brochures to Mr. Magana at his high school. The brochures and slide show recited the 90% Placement and Higher Income Claims. At the time, Plaintiff Magana was considering other post-secondary education options including without limitation attending community college.

73.     Plaintiff Magana reviewed the brochures he was given and visited the DeVry website online during September 2009 and/or October 2009 where he again saw the 90% Placement and Higher Income Claims and completed an online request for information. Mr. Magana received an immediate telephone call from a Ms. Newman who was a DeVry "recruiter" and scheduled a meeting at the Palmdale DeVry campus for the same day.

74.     At that meeting, Plaintiff Magana was given a packet that contained brochures and other written promotional material, including the 90% Placement and Higher Income Claims.  Ms. Newman also told Plaintiff Magana he could complete his bachelor's degree in three years and that if he hurried he could attend the session starting in two weeks.

75.     In reliance on the information set forth on DeVry's website, in their television ads, in the brochures, in the slide shows, and provided by Ms. Newman, Plaintiff Magana enrolled online as a full-time student with DeVry pursuing a bachelor's degree.

76.     Plaintiff Magana paid DeVry over $55,00 in tuition comprised entirely of student loans that were paid directly to and converted by DeVry for its own use, plus interest, and other DeVry education related expenses such as books and supplies, including instruction on DeVry's website.  On information and belief, Plaintiff Magana re-executed an online enrollment agreement in the fall of 2010 and 2011.  Mr. Magana attended the Palmdale DVU campus and used the DeVry website until the spring of 2012.

## PLAINTIFF VERSETTO'S EXPERIENCE

77.     Plaintiff Nicole Versetto is a resident of Elgin, Illinois. Since early 2013, Plaintiff Versetto viewed DeVry's television ads and heard DeVry's radio ads touting its 90% Placement and Higher Income Claims. In or around June or July 2013, Plaintiff Versetto had several telephone conversations with DeVry sales people wherein they recited the sales pitch touting DeVry's 90% Placement and Higher Income Claims. In addition, Plaintiff Versetto visited DeVry's website prior to enrollment and was presented with the 90% Placement and Higher Income Claims.

78.     At the time, Plaintiff Versetto was considering other post-secondary education options, including other institutions that offered associate degrees.

79.     Nevertheless, on July 10, 2013, Plaintiff Versetto enrolled online as a full-time student pursuing a bachelor's degree with DeVry in reliance on the information set forth on DeVry's website, in its television ads, and in the brochures, and provided to her through DeVry's scripted sales pitches.

80.     Plaintiff Versetto paid DeVry over $20,000 in tuition comprised entirely of student loans that were paid directly to and converted by DeVry for its own use, plus interest, and other DeVry education related expenses such as books and supplies, including instruction on DeVry's website.

81.     Plaintiff Versetto completed her undergraduate degree in 2015 by using the DeVry website.

## CHOICE OF LAW

82.     Defendants have chosen and consented to the choice of Illinois law under Defendants' website "Terms of Service" ("TOS"), appearing at www.devry.edu/terms-of-

service.html, which provides:

> "**Disputes**. In light of DeVry's substantial contacts with the State of Illinois, and your and our interests in ensuring that disputes regarding the interpretation, validity and enforceability of the TOS are resolved on a uniform basis, and DVU's execution of, and the making of, the TOS in Illinois, you agree that: . . . (ii) *the Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois, without regard for any conflict of law principles*. [Emphasis added.]

Plaintiffs and the Class members are users of Defendants' website. Defendants have chosen

Illinois law to govern the disputes, litigation, claims, and causes of action set forth herein without

regard to any conflict of law principles.

## CLASS ACTION ALLEGATIONS

83.    Plaintiffs bring this action pursuant to pursuant to Federal Rule of Civil

Procedure 23 (b)(2) and (b)(3) on behalf of themselves and all Members of the "Student Class,"

defined as:

> **Student Class**: All Students who purchased or otherwise paid for and received any part of a DeVry education program between January 1, 2008 and April 8, 2016.

84.    Additionally, Plaintiffs bring this action pursuant to Federal Rule of Civil

Procedure 23 (b)(2) and (b)(3) on behalf of themselves and all Members of the "DOE Borrower

Class," defined as:

> **DOE Borrower Class**: All Students who purchased or otherwise paid for and received a DeVry education program with direct student loan proceeds from the United States Treasury, and administered by the federal Department of Education, between January 1, 2008 and April 8, 2016.

85.    Additionally, Plaintiffs Robinson and Versetto bring this action pursuant to

Federal Rule of Civil Procedure 23 (b)(2) and (b)(3) on behalf of themselves and all Members of

the "Contract Class," defined as:

> **Contract Class**: All individuals who: (a) entered into an enrollment agreement substantially in accordance with the terms and conditions of the Enrollment Agreement; and (b) purchased or otherwise paid for a DeVry University, Inc.

23

education program between January 1, 2008 and April 8, 2016.

86.     Additionally, Plaintiff Magana brings this action pursuant to Federal Rule of

Civil Procedure 23 (b)(2) and (b)(3) on behalf of himself and all Members of the "California

Class," defined as:

> **California Class**: All individuals who purchased or otherwise paid for and received a
> DeVry education program while residing in or attending a DeVry campus located in
> California, between January 1, 2008 and April 8, 2016.

87.     The Classes described in this First Amended Complaint may be jointly referred

to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class

Members."

88.     The following people are excluded from the Class: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendants, Defendants'

subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their

parents have a controlling interest and their current or former employees, officers and directors;

(3) persons who properly execute and file a timely request for exclusion from the Class; (4)

persons whose claims in this matter have been finally adjudicated on the merits or otherwise

released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives,

successors, and assigns of any such excluded persons.

89.     Plaintiffs satisfy the numerosity, commonality, typicality, adequacy, and

predominance prerequisites for suing as representative parties pursuant to Rule 23 of the Federal

Rules of Civil Procedure.

90.     **Numerosity**: The exact number of members of the Class is unknown and is not

available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class

likely consists of tens, if not hundreds, of thousands of individuals. Class members can be easily

identified through Defendants' records.

91.　　**Ascertainability**: The Class is ascertainable through DeVry's records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other consumer breach of contract, unlawful trade practices, and class action controversies**.**

92.　　**Typicality**: Plaintiffs' claims are typical of the claims of other members of the Class, in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform Enrollment Agreement and wrongful conduct and misrepresentations.

93.　　**Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

94.　　**Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.　　Whether the DeVry Enrollment Agreement was a legal, valid, and enforceable contract;

b.　　Whether DeVry breached its contractual representations, warranties, promises, conditions precedent, and covenants that its published information about its programs, policies, services, and graduate outcomes provided on its website, in its catalogs, and in advertisements and other materials were complete and accurate;

c.　　Whether Plaintiffs and the Class were damaged as a proximate cause or result of Defendants' breaches;

d.　　Whether Defendants failed to disclose that Defendants' education program

25

and services were of a lower quality and value than, and not as, expressly represented, warranted, promised, and covenanted;

e.     Whether Defendants had a duty to disclose the truth about its 90% Placement and Higher Income Claims in connection with the DeVry education program and services;

f.     Whether Defendants knew or should have known their practices and representations related to the marketing, labeling and sales of the education program were false, misleading, or confusing;

g.     Whether Defendants are liable for negligence or gross negligence;

h.     Whether Defendants' misrepresentations and omissions about its 90% Placement and Higher Income Claims in connection with the DeVry education program and services were likely to deceive, confuse, or create a misunderstanding;

i.     Whether Defendants' conduct, practices, and representations related to the marketing, advertising, labeling, and sales of the DeVry education program and services were unfair, deceptive, confusing, misleading and/or unlawful in any respect, thereby violating the UDTPA and other applicable State laws;

j.     Whether Defendants collected, took, or received monies from student loan proceeds in Defendants' possession and belonging to Plaintiffs and the Class and wrongfully converted such monies to their own use and benefit;

k.     Whether Defendants' practices and representations related to the marketing, labeling and sales of the education program breached conditions precedent in, of, or to the Enrollment Agreement;

l.     Whether Defendants' practices and representations related to the marketing, labeling and sales of the education program breached express warranties;

m.     Whether Defendants' practices and representations related to the marketing, labeling and sales of the education program breached implied warranties; and

n.     Whether Plaintiffs and members of the Class are entitled to rescission, restitutionary, injunctive, declaratory, or other relief.

95.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

26

this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS 510/1 *et. seq.*)**
**(Against All Defendants on Behalf of All Plaintiffs and the Student Class)**

96.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

97.     Plaintiffs, the Student Class Members, and Defendants are "persons" under the UDTPA, 815 ILCS 510/1(5), which defines a "person" as "an individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, 2 or more of any of the foregoing having a joint or common interest or any other legal or commercial entity."

98.     Under the UDTPA, a person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, that person:

   a.   "represents that products or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection

27

that he or she does not have." 815 ILCS 510/2(5).

b.   "represents that products or services are of particular standard, quality, or grade or that products are of a particular style or model, if they are of another." 815 ILCS 510/2(7).

c.   "advertises products or services with intent not to sell them as advertised." 815 ILCS 510/2(9).

d.   "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(12).

99.   Through the means described herein above, Defendants have represented, expressly or by implication, in their advertising and promotional material conducted within the state of Illinois, and directed at its citizens, as well as other persons within Illinois and around the United States, and Plaintiffs and the Student Class Members that: (a) as a result of obtaining a DeVry degree, 90% of DeVry graduates from a specific year who were actively seeking employment landed or obtained new jobs in their field of study within six months of graduation; (b) after graduation the average or median earnings of DeVry graduates is higher than the average or median earnings of graduates from all other colleges and universities; and (d) DeVry bachelor's degree graduates specifically earn up to 15% more than graduates from other colleges and universities.

100.   Each representation set forth in above is false, misleading, and/or confusing and was not substantiated at the time the representation was made. Therefore, the making of each representation as set forth herein above constitutes a deceptive act or practice, in violation of the UDTPA.

101.   Defendants intended that Plaintiffs and the Student Class Members rely on its deceptive practices in an attempt to induce them to purchase an education program from DeVry. Defendants' deception occurred during the marketing and sale of the DeVry education program and related services in the course of Defendants' business.

102.    Defendants have a duty arising from their superior knowledge of their true placement statistics of its graduates as compared to consumers (*e.g.*, through Defendants' ongoing annual collection and study of placement statistics for its graduates) and its partial representations, omissions, and/or misrepresentations to the contrary, to disclose at the point of sale and/or otherwise that the 90% Placement and Higher Income Claims were false.

103.    Defendants willfully and intentionally failed to disclose one or more important and material facts that were only known to them and that Plaintiffs and the Class Members could not have discovered; and/or Defendants actively concealed one or more important and material facts from Plaintiffs and the Student Class Members and/or prevented them from discovering such fact or facts.

104.    Defendants failed to disclose and concealed the true facts that the 90% Placement Claim and Higher Income Claims were false. These omissions would be material to a reasonable consumer. Reasonable consumers are likely to be deceived and confused by Defendants' material misrepresentations and omissions.

105.    Plaintiffs and Student Class Members suffered injury-in-fact, including the loss of money, as a result of Defendants' unlawful, unfair, and/or deceptive practices. Plaintiffs and Student Class Members were directly and proximately injured by Defendants' conduct and lost money and incurred student loan debt as a result of Defendants' wrongful conduct, misrepresentations, and material omissions, because they would not have purchased or would not have paid as much for DeVry's educational services and products had they known the truth. Consumers are likely to be damaged by Defendants' continuing deceptive trade practices.

106.    Plaintiffs and Student Class Members are at a heightened and imminent risk of being financially unable to repay, and in default of, their student loans resulting from

Defendants' wrongful and unlawful conduct. Interest on student loans continues to accrue every day, whether such loans are in forbearance or default or not.

107.    Plaintiffs and Student Class Member are suffering actual and imminent harm that is concrete and ongoing with each passing day of interest. An actual dispute between Plaintiffs and the other Student Class Members and Defendants exists, and the parties have genuine, direct, and substantial opposing interests for which a judicial determination will be final and conclusive.

108.    Plaintiffs and the Student Class Members who took out student loans have a defense against repayment in any action to collect such loans based on any act or omission of Defendants that would give rise to a cause of action against Defendants under applicable State law. 34 CFR 685.206(c)(1) and (2). To the extent Plaintiffs and Student Class Members are relieved of repayment obligations for student loans based on violations of applicable State law, Defendants are subject to payment of the amount of the loan to which the defense applied. 34 CFR 685.206(c)(3).

109.    Plaintiffs request that the Court: (a) enter an order declaring Defendants' conduct to be a false, misleading, and/or confusing and a willful violation of the UDTPA and applicable state laws; (b) enter an order declaring Defendants engaged in deceptive trade practices in violation of 815 ILCS 510(5), (7), (9), and (12) by, *inter alia,* misrepresenting the quality, characteristics, uses, and benefits of the education program, and actively concealing, and causing others to conceal, material information about the true nature of the education program sold by Defendants; and (c) enter such other orders or judgments as may be necessary to enjoin Defendants from continuing their unfair and deceptive business practices, and to provide such other relief as set forth below and remedy the injury-in-fact resulting from Defendants unlawful conduct.

110.     Plaintiffs are entitled to an award of reasonable attorneys' fees and costs under

815 ILCS 510/3 by any declaratory, injunctive, or other relief entered herein.

**SECOND CAUSE OF ACTION**
**Illinois Consumer Fraud And Deceptive Trade Practices Act**
**(815 ILCS 505, *et. seq.*)**
**(Against All Defendants on Behalf of All Plaintiffs and the Student Class)**

111.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

112.     The ICFA, 815 ILCS 505, *et. seq.* provides that Defendants may not employ

"[u]nfair methods of competition and unfair or deceptive acts or practices, including but not

limited to the use or employment of any deception fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or omission of any material fact, with intent

that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS

505/2.

113.     Through the means described herein above, Defendants have represented,

expressly or by implication, in their advertising and promotional material conducted within the

state of Illinois, and directed at its citizens, as well as other persons within Illinois and around the

United States, and Plaintiffs and the Student Class Members that: (a) as a result of obtaining a

DeVry degree, 90% of DeVry graduates from a specific year who were actively seeking

employment landed or obtained new jobs in their field of study within six months of graduation;

(b) after graduation the average or median earnings of DeVry graduates is higher than the

average or median earnings of graduates from all other colleges and universities; and (d) DeVry

bachelor's degree graduates specifically earn up to 15% more than graduates from other colleges

and universities.

114.     Defendants intended that Plaintiffs and the Student Class Members rely on their

deceptive and practices and induced them to purchase a DeVry education program and related

31

services. Defendants' deception occurred during the marketing and sale of Defendants' education program and related services in the course of trade and commerce in the state of Illinois, and directed at its citizens, as well as other persons within Illinois and around the United States. As a result of Defendants' violations of the ICFA as described herein, Plaintiffs and the Class Members have been harmed and suffered actual damages and injury-in-fact caused by Defendants' deception.

115. Plaintiffs and Class Members are entitled to, and hereby seek, actual damages, reasonable attorneys' fees and costs, injunctive relief, and any and all further equitable relief that this Court deems appropriate.

**THIRD CAUSE OF ACTION**
**Illinois Private Business And Vocational Schools Act**
**(105 ILCS 425/1, *et. seq.*)**
**(Against All Defendants on Behalf of All Plaintiffs and the Student Class)**

116. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

117. 105 ILCS 426/5 provides:

"It is the purpose of this Act to provide for the protection, education, and welfare of the citizens of this State; *to provide for the education, protection, and welfare of the students of its private business and vocational schools*; and to facilitate and promote quality education and responsible, ethical, business practices in each of the private business and vocational schools enrolling students in this State." [Emphasis added].

118. 105 ILCS 426/85(h) provides:

"[a]ny owner, operator, or authorized agent of a private business and vocational school who commits any of the following offenses is guilty of a Class A misdemeanor for the first offense and a Class 4 felony for the second or subsequent offense. Knowingly and for the purpose of inducing a person to enroll in the program of study offered by the school, makes any false or misleading statements, misrepresentations, or false promises to the person regarding opportunities upon graduation from the school for (i) employment in a business, industry, or trade, (ii) admission to an institution of higher learning, or (iii) admission to an occupational licensing examination."

119. 105 ILCS 426/85(m) provides:

32

"[a]ny person who suffers damages as a result of a violation of this Act committed by a school or its representative may bring an action against the school. The court, in its discretion, may award actual damages, treble actual damages if fraud is proved, injunctive relief, and any other relief that the court deems proper. Such action may be commenced in the county where the school is located or has its principal place of business or in the county where the transaction or any substantial portion thereof occurred. In any action brought by a person under this Section, the court may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party. Either party to an action under this Section may request a trial by jury."

120.    DeVry and DVU are private business and vocational schools enrolling students in the state of Illinois. Plaintiffs and the Student Class Members are students of DeVry and DVU, which are Illinois private business and vocational schools.

121.    Through the means described herein above, Defendants have represented, expressly or by implication, in their advertising and promotional material conducted within the state of Illinois, and directed at its citizens, as well as other persons within Illinois and around the United States, and Plaintiffs and the Student Class Members that: (a) as a result of obtaining a DeVry degree, 90% of DeVry graduates from a specific year who were actively seeking employment landed or obtained new jobs in their field of study within six months of graduation; (b) after graduation the average or median earnings of DeVry graduates is higher than the average or median earnings of graduates from all other colleges and universities; and (d) DeVry bachelor's degree graduates specifically earn up to 15% more than graduates from other colleges and universities.

122.    Each representation set forth in above is false or misleading and was not substantiated at the time the representation was made. Therefore, the making of each representation as set forth herein above constitutes a deceptive act or practice, in violation of the VSA, 105 ILCS 425, *et seq.*

123.    Defendants knowingly and for the purpose of influencing and inducing Plaintiffs and the Student Class Members to enroll in the education program and course of instruction offered by DeVry made false and misleading statements, misrepresentations, and false promises regarding the opportunities upon graduation from the school for employment in business, industry or trade.

124.    As a result of Defendants' violations of the VSA as described herein, Plaintiffs and the Student Class Members have been harmed and suffered actual damages and injury-in-fact.

125.    Plaintiffs and Student Class Members are entitled to, and hereby seek, actual damages, punitive damages, treble damages, reasonable attorneys' fees and costs under, injunctive relief, and any and all further equitable relief that this Court deems appropriate.

<u>FOURTH CAUSE OF ACTION</u>

**Violation of California's False Advertising Law
Cal. Bus. & Prof. Code §§ 17500, *et seq.*
(Against All Defendants On Behalf of Plaintiff Magana and the California Class)**

126.    Plaintiff Magana and the California Class Members incorporate the foregoing allegations as if fully set forth herein.

127.    California Business & Professions Code Section 17500 provides in pertinent part:

"It is unlawful for any person, firm, corporation or association . . . to make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or other publication, or any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

128.    Defendants willfully violated, and continue to violate, California's False

34

Advertising Law ("FAL") by intentionally and knowingly disseminating the 90% Placement and

Higher Income Claims to Plaintiff Magana and the California Class, which are misleading,

deceptive, and/or untrue. Defendants knowingly and intentionally withheld material information

from Plaintiff Magana and California Class Members about the true nature and value of the

education program and its 90% Placement and Higher Income Claims for financial gain.

129.    Additionally, or in the alternative, Defendants knew, or should have known

through the exercise of reasonable care, that their disseminated advertisements (including

representations and omissions) concerning the 90% Placement and Higher Income Claims were

untrue, deceptive, and/or misleading.

130.    Plaintiff Magana and the California Class Members reasonably relied upon

Defendants' representations and omissions regarding the qualities and attributes of the 90%

Placement and Higher Income Claims.

131.    Plaintiff Magana and the California Class Members would not have purchased an

education program from DeVry, or would not have paid as much for it, had they known the true

nature of the education program and such nature were properly and truthfully represented,

including, but not limited to, the 90% Placement and Higher Income Claims.

132.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

Magana and the California Class Members have suffered injury-in-fact, including, but not

limited to, monetary loss in connection with purchases of the education program that they would

not have purchased, or would not have paid as much for, absent Defendants' false and/or

misleading representations and omissions.

133.    Accordingly, Plaintiff Magana and the California Class Members are entitled to,

and hereby seek, an order of this Court enjoining Defendants from continuing to engage in

35

deceptive business practices, false advertising, and any other act prohibited by law, including

those set forth in this First Amended Complaint, pursuant to Section 17535 of the FAL.

134.    Plaintiff Magana and the California Class Members are further entitled to, and

hereby seek, an order for disgorgement and restitution of all monies acquired from the sales of

Defendants' education programs, which were unjustly acquired through its wrongful business

practices, as well as any other further equitable relief this Court may deem necessary, just, and

proper under the circumstances. Additionally, Plaintiff Magana and the California Class seek

pre-and-post judgment interest and attorneys' fees and costs as allowed by statute. See e.g., Cal.

Civ. Proc. Code § 1021.5.

## FIFTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(Against All Defendants On Behalf of Plaintiff Magana and the California Class)**

135.    Plaintiff Magana and the California Class Members incorporate the foregoing

allegations as if fully set forth herein.

136.    California's Unfair Competition Law ("UCL") prohibits unfair competition,

defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

untrue or misleading advertising and any act prohibited by [California's False Advertising

Law]." Cal. Bus. & Prof. Code § 17200.

137.    Defendants willfully violated, and continue to violate, the "unlawful" prong of the

UCL by violating applicable federal and state law, including Section 13(b) of the Federal Trade

Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), as well as California's

Consumer Legal Remedies Act, False Advertising Law, and other applicable statutes and laws

alleged herein.

138.    Defendants willfully violated, and continue to violate, the "fraudulent" prong of the UCL through misrepresentations, omissions, and non-disclosures and the 90% Placement and Higher Income Claims which are false, misleading, and have a tendency to deceive, and did deceive, Plaintiff Magana, California Class Members, and the general public, as detailed herein.

139.    Defendants willfully violated, and continue to violate, the "unfair" prong of the UCL by gaining unjust profits from Defendants' acts, omissions, misrepresentations and non-disclosures and the 90% Placement and Higher Income Claims inducing Plaintiff Magana and California Class Members to enroll at DeVry and borrow student loans and pay them over to Defendants in violation of their statutorily and common law protected rights.

140.    The acts, omissions, misrepresentations, and non-disclosures of Defendants and the 90% Placement and Higher Income Claims to Plaintiff Magana and the California Class, as described herein, further constitutes "unfair" business acts and practices under the UCL in that Defendants' conduct offends public policy against deceptive advertising and fraud and seeks to profit, capitalize on, and gain an unfair advantage over law-abiding competitors.

141.    Plaintiff Magana and California Class Members would not have purchased the education program and related services, or would not have paid as much for them, had they known the true facts.

142.    Neither Plaintiff Magana nor the California Class Members did discover, or could have discovered with any amount of reasonable diligence, the true facts regarding the 90% Placement and Higher Income Claims until January 27, 2016 when the FTC Lawsuit was filed. Plaintiff Magana and the California Class Members were ignorant of the true facts regarding Defendants' 90% Placement and Higher Income Claims, and lacked the ability to have earlier discovered the true facts, until January 27, 2016. Discovery of the true facts did not actually

37

occur, and could not have occurred, until after any applicable statutes of limitation, including the five-year statute of limitations for fraud and the four-year statute of limitations for California's unfair competition law and illegal business practices.

143.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff Magana and the California Class Members have suffered injury-in-fact, including but not limited to, monetary loss in connection with purchases of the education program they would not have purchased absent Defendants' unlawful conduct and false and/or misleading representations and omissions, or would not have paid as much for, and have suffered economic damages, including incurring student loans and paying education related costs, expenses, and charges they would not have otherwise incurred and paid.

144.    Accordingly, Plaintiff and the California Class Members are entitled to, and hereby seek, an order of this Court enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign pursuant to Section 17203 of the UCL.

145.    Plaintiff Magana and the California Class Members are further entitled to, and hereby seek an order for disgorgement and restitution of all monies acquired from the sales of the education related costs, expenses, and charges which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition by Defendants, as well as any other further equitable relief this Court may deem necessary, just, and proper under the circumstances. Additionally, Plaintiff Magana and the California Class seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute. *See e.g.*, Cal. Civ. Proc. Code § 1021.5.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)
### (Against All Defendants on Behalf of Plaintiffs
### Robinson and Versetto and the Contract Class)

146. Plaintiff Robinson and Versetto incorporate the foregoing allegations as if fully set forth herein.

147. Plaintiffs Robinson and Versetto, and each Contract Class Member, entered into a written uniform Enrollment Agreement and contract with DeVry. Pursuant to the terms of the Enrollment Agreement, DeVry agreed, amongst other obligations, to provide the education program to Plaintiffs Robinson and Versetto and members of the Contract Class who in turn agreed to pay DeVry money in the form of tuition payments.

148. In the Enrollment Agreement, DeVry contractually represented, warranted, promised, covenanted, made as a condition precedent in, of, and to the Enrollment Agreement with Plaintiffs Robinson and Versetto and the Contract Class that:

**Accurate Information Disclosure**
"DeVry publishes accurate information about its programs, policies, services, and graduate outcomes. Complete, accurate information is provided on our website, In [sic] our catalogs, and in advertisements and other materials published by DeVry."

149. Defendants incorporated the 90% Placement and Higher Income Claims into the Enrollment Agreement with Plaintiffs Robinson and Versetto and the Contract Class by reference, by expressly referencing such information and providing:

"For comprehensive consumer information, please visit devry.edu/studentconsumerinfo."

150. Defendants contractually represented, warranted, promised, covenanted, and made a condition precedent in, to, and of the Enrollment Agreement with Plaintiffs Robinson and Versetto and the Contract Class that:

**Career Services**
 "DeVry's graduate employment statistics do not include graduates who do not actively participate in an employment search."

151.    Defendants breached their Enrollment Agreement with Plaintiffs Robinson and Versetto and the Contract Class Members, in that DeVry's representations regarding the 90% Placement and Higher Income Claims in connection with the information about their programs, policies, services, and graduate outcomes provided on their website, in their catalogs, and in their advertisements and other materials published by Defendants were false, incomplete, inaccurate, deceptive, and unfair. Had Plaintiffs Robinson and Versetto and the Contract Class Members known the falsity of the 90% Placement and Higher Income Claims made by Defendants in the Enrollment Agreement, they would not have entered into the Enrollment Agreement, would not have paid as much for the education program, if in fact they would have purchased any products and services from Defendants at all, and would not have taken out student loans and paid monies to Defendants.

152.    Defendants breached the Enrollment Agreement as alleged herein, and Plaintiffs Robinson and Versetto and the Contract Class have been damaged as a direct and proximate result thereof. Plaintiffs Robinson and Versetto and the Contract Class are entitled to actual damages in an amount to be determined in this proceeding.

### SEVENTH CAUSE OF ACTION
**(Misrepresentation)**
**(Against All Defendants on Behalf of All Plaintiffs and the Student Class)**

153.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

154.    The elements of the tort of fraudulent misrepresentation are: (1) [a] false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in [justifiable] reliance on the truth of

the statement; and (5) damage to the other party resulting from such reliance.

155.    Defendants intentionally and knowingly made the 90% Placement and Higher Income Claims, which were false, untrue statements of material facts to Plaintiffs and Student Class Members concerning the education program.

156.    Defendants intentionally and knowingly misrepresented and/or suggested the aforementioned untrue or misleading facts to Plaintiffs and Class Members with the intent to induce them to enroll and purchase an education program from Defendants.

157.    Defendants' representations are false and misleading, because: (a) the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is in fact significantly and materially smaller than 90%; and (b) Defendants' own statistics showed that graduates of DeVry did not have any higher income than graduates from other schools and that such claim was false, misleading, deceptive and incomplete.

158.    Defendants knew that their representations were false and/or misleading when made, or made the representations and suggestions recklessly and without regard for their truth. Plaintiffs and the Student Class Members have suffered damages and injury-in-fact the form of, without limitation, liability for student loans, tuition, and other payments for their education program.

159.    Plaintiffs and Class Members justifiably relied on the 90% Placement and Higher Income Claims and would not have purchased an education program or any other of Defendants' services, or would not have paid as much for them, had they known the truth about the 90% Placement and Higher Income Claims.

160.    Plaintiffs and Student Class Members are entitled to, and hereby seek, actual

damages, punitive damages, treble damages, reasonable attorneys' fees and costs under, and any and all further equitable relief that this Court deems appropriate.

## EIGHTH CAUSE OF ACTION
### (Concealment)
### (Against All Defendants on Behalf of All Plaintiffs and the Student Class)

161.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

162.    Defendants intentionally and knowingly concealed material facts from Plaintiffs and Class Members that were known only to Defendants prior to Plaintiffs and Class Members' purchases of a DeVry education program and related products and services.

163.    Defendants intentionally and knowingly concealed the aforementioned material facts from Plaintiffs and Class Members with the intent to induce them to purchase an education program and related products and services.

164.    Defendants had, and have, a duty to disclose the concealed information because Plaintiffs and Class Members did not know of the concealed facts prior to purchasing a DeVry education program and related services, nor could they reasonably be expected to learn or discover such concealed facts prior thereto.

165.    Plaintiffs and Class Members would not have purchased the education program and related services, or would not have paid as much therefor, had they known of the concealed information.

166.    Plaintiffs and the Student Class justifiably relied on the facts as they knew them at the time, and as a direct and proximate result of Defendants' fraudulent concealment of material facts, Plaintiffs and Class Members have suffered actual injury-in-fact and damages, including but not limited to, monetary loss in connection with purchases of the education program and related services they would not have purchased absent Defendants' concealment, fraudulent

omissions. and non-disclosures, or would not have paid as much for.

167.    Accordingly, Plaintiffs and Student Class Members are entitled to, and hereby seek, actual damages, punitive damages, treble damages, reasonable attorneys' fees and costs, and any and all further equitable relief that this Court deems appropriate.

**NINTH CAUSE OF ACTION**
**(Negligence)**
**(Against All Defendants on Behalf of All Plaintiffs and the Student Class)**

168.    Plaintiffs and Student Class Members incorporate by reference the foregoing allegations.

169.    In providing an education program to Plaintiffs and the Student Class Members, Defendants owed a duty to exercise reasonable care to make full, fair, and adequate disclosure in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of their education program. This duty included, among other things, taking reasonable measures to protect the rights of Student Class Members in compliance with applicable law, including, but not limited to, procedures and policies to supervise, restrict, limit, and determine the accuracy and truthfulness of their claims, materials, and advertising in connection with the education program.

170.    In providing an education program to Plaintiffs and the Student Class Members, Defendants owed a duty to exercise reasonable care regarding and when making the 90% Placement and Higher Income Claims, and representations and omissions in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of the education program.

171.    Defendants' advertising and promotional materials were intended to affect Plaintiffs and the Student Class Members. Defendants were aware that by representing that their claims, materials, and advertising about the education program were accurate, that it had a

43

responsibility to take reasonable measures to ascertain and fully, fairly, and adequately disclose the accuracy and truthfulness thereof.

172.    It was foreseeable that if Defendants did not take reasonable measures to ascertain and ensure the accuracy and truthfulness of their representations Plaintiffs and Student Class Members would borrow money through student loans to purchase a DeVry education program. Defendants should have known to take precautions to ensure their 90% Placement and Higher Income Claims, advertising, materials, and representations were accurate.

173.    But for Defendants' failure to implement and maintain adequate measures to ensure the accuracy of their claims and materials in connection with their education program, and their failure to monitor their policies and procedures to identify inaccurate, untruthful, and unlawful claims, Plaintiffs and Student Class Members would not have taken out student loans, would not have purchased a DeVry education program for the price they paid, if in fact they would have purchased the education program at all, and would not be at a heightened risk of being financially unable to repay, or defaulting on, their student loans in the future.

174.    Defendants' negligence was a substantial factor in causing harm to Plaintiffs and Student Class Members. As a direct and proximate cause and result of Defendants' failure to exercise reasonable care and use reasonable measures to ensure the accuracy of their 90% Placement and Higher Income Claims, Plaintiffs and Student Class Members have suffered actual injury-in-fact and economic damages, including incurring student loan debt and paying education related costs that they would not have otherwise incurred and paid.

175.    Neither Plaintiffs nor other Student Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to Plaintiffs' making of the 90% Placement and Higher Income Claims, nor to the insufficient policies, procedures, and measures which were

44

omitted and led to the failure to ensure the accuracy and truthfulness of Defendants' claims in connection with the nature of the education program.

176.     Plaintiffs and the Student Class seek compensatory damages, the costs of suit and attorneys' fees, and other and further relief as is deemed just and proper as further set forth below.

**TENTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
**(Against All Defendants on Behalf of All Plaintiffs and the Student Class)**

177.     Plaintiffs and Student Class Members incorporate by reference the foregoing allegations.

178.     DeVry's 2014 10-K admits:

"Specialized staff at DeVry's home office review, interpret, and establish procedures for compliance with regulations governing financial assistance programs and processing financial aid applications. Financial assistance programs are required to be administered in accordance with the standard of care and diligence of a fiduciary."

179.     Defendants owed Plaintiffs and the Student Class Members a fiduciary duty to make sure that government financial assistance programs, including without limitation student loans, and the processing of financial aid applications were administered in accordance with the standard of care and diligence of a fiduciary.

180.     Defendants breached their fiduciary duties to Plaintiffs and the Student Class Members by, without limitation, failing to review, interpret, establish procedures for, and comply with regulations and the standard of care and diligence of a fiduciary in arranging, administering, and handling Plaintiffs' and the Student Class Members' student loans and financial assistance.

181.     Plaintiffs and the Student Class Members justifiably relied on Defendants to meet the standard of care and diligence of a fiduciary, and as a direct and proximate result of

45

Defendants' acts and omissions, Plaintiffs and Student Class Members have suffered actual injury-in-fact and damages, including but not limited to, monetary loss in connection with borrowing student loans and purchases of an education program and related products and services they would not have borrowed for or purchased absent Defendants' concealment, fraudulent omissions, and non-disclosures, or would not have paid as much for. They have suffered economic damages, including incurring student loans and paying education related costs, expenses, and charges they would not have otherwise incurred and paid.

182.    Accordingly, Plaintiffs and Student Class Members are entitled to, and hereby seek, actual damages, punitive damages, treble damages, reasonable attorneys' fees and costs, and any and all further equitable relief that this Court deems appropriate.

**ELEVENTH CAUSE OF ACTION**
**(Conversion)**
**(Against All Defendants on Behalf of All Plaintiffs and the DOE Borrower Class)**

183.    Plaintiffs and DOE Borrower Class Members incorporate by reference the foregoing allegations.

184.    Plaintiffs and the DOE Borrower Class Members are the lawful owners of the student loan proceeds and other monies lent to and borrowed by them in the form of student loans from the U.S. Treasury and administered by the federal government Department of Education.

185.    The student loan proceeds were paid directly to DeVry for Plaintiffs' and each DOE Borrower Class Member's account and benefit. As a result of Defendants' wrongful conduct, which includes their collection and receipt of student loan proceeds paid for Plaintiffs' and the DOE Borrower Class' benefit, Defendants have interfered with and converted Plaintiffs' and the DOE Borrower Class' ownership interest in, or right to possess, such student loan

46

proceeds.

186.     The student loan proceeds Defendants misappropriated are in a specific sum

capable of identification. Plaintiffs and DOE Borrower Class Members have been damaged by

Defendants' conversion.

## TWELFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against All Defendants on Behalf of All Plaintiffs and the Student Class)

187.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

herein.

188.     Unjust enrichment is a common-law theory of recovery or restitution that arises

when the defendant is retaining a benefit to the plaintiff's detriment, and such retention is unjust.

The elements of unjust enrichment may be established without reference to a separate underlying

claim in tort, contract, or statute.

189.     Defendants received significant revenues from tuition paid by Plaintiffs and

Class Members.  Defendants appreciate and have knowledge of such benefits.

190.     Defendants' retention of an unjust benefit is due to their unlawful and improper

conduct as set forth herein sounding in tort, contract, or statute.

191.     Under principles of equity and good conscience, Defendants should not be

permitted to retain the profits they receive at the expense of Plaintiffs and the Student Class

while failing to have provided them with complete and truthful information regarding the 90%

Placement and Higher Income Claims.

192.     Plaintiffs and Class Members received less than what they paid for in that the

90% Placement and Higher Income Claims were not true and the DeVry education program was

not delivered as promised. Had Plaintiffs and Class Members known about the

47

misrepresentations and the true placement rate and income rate, they would not have purchased the education program or any products or services from Defendants, or would have paid significantly less for them, if at all.

193. Plaintiffs, individually and on behalf of the Student Class Members, seek restitution and/or disgorgement of all monies Defendants have unjustly received as a result of their conduct alleged herein.

## THIRTEENTH CAUSE OF ACTION
### (Declaratory Relief)
### (Against All Defendants on Behalf of All Plaintiffs and the Student Class)

194. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

195. A court may make binding declarations of the construction of any statutes, and a declaration of the rights of the parties interested by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well. 735 ILCS 5/2-701.

196. Plaintiffs and the Student Class Members are at a heightened and imminent risk of being financially unable to repay, and in default of, their student loans resulting from Defendants' wrongful and unlawful conduct. Interest on student loans continues to accrue every day, whether such loans are in forbearance or default or not.

197. Plaintiffs and the Student Class Members are suffering actual and imminent harm that is concrete and ongoing with each passing day of interest. An actual controversy and dispute between Plaintiffs and the other Student Class Members and Defendants exists, and the parties have genuine, direct, and substantial opposing interests for which a judicial determination will be final and conclusive.

198.     Plaintiffs and the Student Class Members who took out student loans have a defense against repayment of such loans in any action to collect such loans based on any act or omission of Defendants that would give rise to a cause of action against Defendants under applicable State law. 34 CFR 685.206(c)(1) and (2).

199.     To the extent Plaintiffs and the Student Class Members are relieved of repayment obligations for student loans based on violations of applicable state law, Defendants are subject to payment of the amount of the loan to which the defense applied. 34 CFR 685.206(c)(3)

200.     Plaintiffs and the Student Class Members are therefore entitled to a declaratory judgment that Defendants' acts and omissions as alleged herein violates applicable State law, including without limitation the UDTPA, ICFA, VSA, FLA, and UCL, as well as such other and further relief as may follow from the entry of such a judgment.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the Court enter a judgment against Defendants, and grant the following relief:

A.    an order certifying the Student Class, the California Class, the Contract Class, and the DOE Borrower Class, designating Plaintiffs as Class Representatives of the appropriate Classes, and designating their counsel of record as Class Counsel;

B.    a declaration that the acts, omissions, and practices described in this claim exist, are unfair, deceptive, unlawful, and a violation of applicable State law;

C.    a declaration that the Enrollment Agreement is an illegal contract and is void *ab initio*;

D.    a declaration that Defendants breached their agreement with Plaintiffs Robinson and Versetto and the Contract Class;

E.  an order permitting Plaintiffs and the members of the Classes to elect to affirm their contracts or alternatively demand rescission and seek damages;

F.  a declaration that Defendants owed a duty of full, fair, adequate, and truthful disclosure in connection with their education program and other educational products, services, and material;

G.  an award to Plaintiffs and members of the Classes for compensatory, exemplary, punitive, treble, and statutory penalties and damages as allowed by law, including interest, in an amount to be proven at trial;

H.  a declaration that Defendants must disgorge for the benefit of Plaintiffs and Classes, all or part of the ill-gotten revenue, gross income, profits, and benefits received from the sale of the education program and/or any other products and services, and make full restitution to Plaintiffs and members of the Classes;

I.  restitution in the amount of monies paid by Plaintiffs and members of the Classes for the education program and any products and services purchased from and sold by Defendants;

J.  an order enjoining Defendants from engaging in further unfair and deceptive advertising, promotion, distribution and sales practices with respect to the education program and any educational products and services;

K.  a permanent injunction prohibiting Defendants and their officers, agents, employees and successors, from engaging in the unlawful practices complained of herein in violation of applicable state law;

L.  a mandatory injunction requiring Defendants to adopt business practices in conformity with the requirements of applicable laws;

M.  a declaration that Defendants are financially responsible for notifying Plaintiffs and

50

all members of the Classes about the true nature of the education program and Defendants' educational products and services;

N.   an order requiring Defendants to notify Plaintiffs and members of the Classes that the 90% Placement and Higher Income Claims are false and untrue;

O.   an order imposing a constructive trust upon Defendants such that their enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably to and for the benefit of Plaintiffs and the members of the Classes;

P.   an award of punitive and treble damages;

Q.   an award of attorneys' fees and costs, including expert fees, as allowed by law;

R.   an award of pre-judgment and post-judgment interest, as provided by law;

S.   leave to amend this First Amended Complaint to conform to the evidence produced at trial; and

T.   such other relief as the Court may deem just, proper, and appropriate under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: December 2, 2016                              /s/ Robert L. Teel
                                                     Robert L. Teel
                                                     lawoffice@rlteel.com
                                                     LAW OFFICE OF ROBERT L. TEEL
                                                     207 Anthes Avenue, Suite 201
                                                     Langley, Washington 98260
                                                     Tel: 866.833.5529
                                                     Fax: 855.609.6911

/s/ Benjamin H. Richman
Benjamin H. Richman
brichman@edelson.com
Sydney M. Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Proposed Classes*