UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T'LANI ROBINSON,<br>ROBBY BROWN,<br>DENNIS MAGANA, and<br>NICOLE VERSETTO,<br><br>      Plaintiffs,<br><br>      v.<br><br>DEVRY EDUCATION GROUP, INC., and<br>DEVRY UNIVERSITY, INC.,<br><br>      Defendants. | No. 16 CV 7447<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Defendants ran a for-profit university whose Enrollment Agreement promised accurate information on its website, in catalogs, advertisements, and other materials. The university claimed that 90% of its students actively seeking employment got jobs in their fields of study within six months of graduation. But the true percentage was actually much lower. Defendants also misrepresented graduates' median income levels. Plaintiffs enrolled at the university (and obtained student loans) in reliance on those representations. The complaint alleges that, had plaintiffs known that the represented employment and income statistics were inaccurate, they never would have enrolled, or would have paid less money. They brought claims under various unfair competition, consumer fraud, and false advertising statutes, claims based on contract and tort theories of relief, and a claim

for declaratory relief. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

**I.      Legal Standard**

A complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, but need not accept legal conclusions or conclusory allegations. *Id.* at 678–79. With a 12(b)(6) motion, a court may consider only allegations in the complaint, documents attached to the complaint, and documents that are both referred to in the complaint and central to its claims. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

**II.     Background**

Defendants DeVry Education Group, Inc., and DeVry University, Inc., own and operate the for-profit school DeVry University. [35] ¶ 1.[1] Plaintiffs T'Lani Robinson, Robby Brown, Dennis Magana, and Nicole Versetto are citizens of Georgia, Missouri, California, and Illinois, respectively, and former students of DeVry. [35] ¶¶ 10–13, 65, 70, 76, 81. During the recruitment and enrollment process, plaintiffs saw and heard variations of statements by DeVry or its representatives related to the success of its graduates.

One staple of DeVry's recruiting and marketing efforts was the claim that 90% of their students who were actively seeking employment had obtained jobs in their fields of study within six months of graduation. [35] ¶ 24. DeVry also issued

---

[1] Bracketed numbers refer to entries on the district court docket.

many statements touting similarly high figures for specific degree programs and specific class years. [35] ¶¶ 25–27. But DeVry had been manipulating its data to substantiate these claims, and the true percentages were much lower. [35] ¶¶ 25–28. DeVry routinely included in its statistics graduates who were employed when they enrolled and who never actively participated in a job search, or those who found jobs outside of their fields of study. [35] ¶ 29. It also improperly excluded from its calculations many graduates who had been actively seeking employment. [35] ¶ 33.

DeVry claimed that its graduates earned more money than graduates from other colleges and universities. [35] ¶ 35. But it based those statistics on data that DeVry knew to be inaccurate. [35] ¶ 36. DeVry manipulated that data to inflate its income statistics, even though the results conflicted with other internal reports. [35] ¶ 37.

DeVry made those claims to prospective students through online advertisements, catalogues, conversations with recruiters, public statements, and regulatory filings. [35] ¶ 39. DeVry promised the accuracy of those claims in its Enrollment Agreement, which stated:

> DeVry publishes accurate information about its programs, policies, services, and graduate outcomes. Complete, accurate information is provided on our website, [in] our catalogs, and in advertisements and other materials published by DeVry.

[35] ¶ 23. Each plaintiff saw the claims and enrolled in DeVry as a result, taking out loans to cover their costs.

Robinson, a Georgia resident, saw online and television advertisements containing representations of high post-graduate employment rates and salaries, starting in 2010, and she ultimately enrolled in the Decatur, Georgia campus. [35] ¶¶ 61–65. Brown, a Missouri resident, saw and heard the post-graduate representations in television and radio ads, in telephone calls with DeVry representatives, on DeVry's website, in brochures, and in in-person meetings, starting in 2010. [35] ¶ 66–69. He entered into an enrollment agreement online and in June 2010, started attending classes at two locations in Kansas City, Missouri. [35] ¶ 70. Magana, a California resident, saw and heard ads on television and radio, starting in 2009, each of which repeated the claims; he also heard the claims in in-person meetings and telephone calls. [35] ¶¶ 71–73. Magana had been considering community college and other education programs, but relying on DeVry's representations, he entered into DeVry's enrollment agreement, took out loans, and attended classes at the Palmdale, California campus. [35] ¶¶ 72, 75, 76.

Versetto, an Illinois resident, saw and heard the misrepresentations about job placement and income in advertisements, in phone calls, and on the website, starting in 2013. [35] ¶ 77. She was considering different education programs at the time, but on July 10, 2013, in reliance on the misrepresentations she saw and heard, she entered into the online enrollment agreement as a full-time student. [35] ¶¶ 78–79. She took out loans to cover tuition and paid over $20,000 in tuition and fees. [35] ¶ 80. She attended classes online and completed her degree in 2015. [35] ¶ 81.

Had plaintiffs known that the employment statistics were inaccurate, they either never would have enrolled or would have paid less for DeVry's services. [35] ¶ 192. DeVry initiated this litigation by filing a complaint against Robinson and Brown seeking declaratory and injunctive relief. [1] ¶ 1. Robinson and Brown filed counterclaims, and DeVry voluntarily dismissed its complaint. [20]. After the parties were realigned, DeVry filed a motion to dismiss, [27], and plaintiffs filed an amended complaint in response. [35]. The complaint alleges claims under three Illinois statutes (Counts I–III) and theories of misrepresentation (Count VII), concealment (Count VIII), negligence (Count IX), breach of fiduciary duty (Count X), conversion (Count XI), and unjust enrichment (Count XII), as well as a claim for declaratory relief (Count XIII). Magana brought claims under two California statutes (Counts IV and V). Robinson and Versetto allege a breach of contract claim (Count VI).

### III. Analysis

#### A. Applicable Law

With the exception of Counts IV and V, plaintiffs bring each of their claims under Illinois law. DeVry contends that the claims asserted by plaintiffs Robinson, Brown, and Magana should be analyzed under the laws of their home states of Georgia, Missouri, and California, respectively. Plaintiffs rely upon a choice-of-law provision in the Terms of Service agreement, located on DeVry's website, to suggest that Illinois law governs the dispute. That provision states:

> Disputes. In light of DeVry's substantial contacts with the State of Illinois, and your and our interests in ensuring that disputes regarding

5

> the interpretation, validity and enforceability of the [Terms of Service] are resolved on a uniform basis, and DVU's execution of, and the making of, the TOS in Illinois, you agree that: . . . (ii) the Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois, without regard for any conflict of law principles.

[35] ¶ 82. DeVry does not object to the enforceability or validity of that provision, but the parties disagree as to whether it bears on plaintiffs' claims. The Terms of Service governs "access to and use of http://devry.edu . . . and the services offered by DVU on the website." Plaintiffs argue that the provision applies to any dispute arising out of their use of DeVry's website and services offered on the website, and that their claims are within the scope of the provision because they each saw the representations at issue on the DeVry website and used the DeVry website to: execute the enrollment agreement, attend online classes, view their student accounts and monitor DeVry's use of their tuition payments, read about DeVry's financial aid programs, order course materials, and make payments for certain products and services.

The choice-of-law provision in the Terms of Service does not dictate the law governing plaintiffs' claims. The provision applies only to the interpretation and enforcement of the Terms of Service, and while Plaintiffs' claims are related to their use of DeVry's website, the claims do not involve a dispute over the interpretation, validity, or enforcement of the Terms of Service. The breach of contract claim, for example, is based on breach of the Enrollment Agreement, which does not contain a choice-of-law provision and does not incorporate the Terms of Service. The choice-of-

law provision does not determine the law applicable to the claims asserted in the complaint.

A federal court sitting in diversity "applies the conflicts principles of the state in which it sits." *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). But "[c]onflicts rules are appealed to only when a difference in law will make a difference to the outcome." *Int'l Administrators, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14, 10 N.E.3d 902, 906 (2014). The consumer fraud laws vary by state, but DeVry does not identify an outcome-determinative conflict with respect to any of plaintiffs' claims. If no conflict is demonstrated, then the claims will be considered under Illinois law.

The application of Illinois law does not necessarily mean that all plaintiffs may assert their claims under Illinois statutes, however. The parties dispute whether Robinson, Brown, and Magana, nonresidents of Illinois, may assert claims under three Illinois statutes: the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count I), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count II), and the Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 425/1 *et seq.* (Count III). In Illinois, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm*

7

*Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184–85 (2005). *Avery* discussed the Illinois Consumer Fraud and Deceptive Business Practices Act, and held that the act, by its own terms, has no extraterritorial effect and applies only when "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 216 Ill.2d at 187. Thus, Illinois law can apply, but the statute might not. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 385 (7th Cir. 2003) ("[A] state's territorial limitations apply even when that state's law is selected for application by a choice-of-law provision.").

The test espoused in *Avery* is not a "bright-line rule but rather a highly fact-bound inquiry in which no single factor would be dispositive." *Crichton v. Golden Rule Insurance Co.*, 576 F.3d 392, 396 (7th Cir. 2009). Plaintiffs argue that the circumstances relating to the disputed transactions occurred primarily and substantially in Illinois. They note that DeVry is headquartered in Illinois, where it develops its curriculum, manages its marketing and recruiting efforts, processes financial aid, and otherwise administers its business. DeVry operates its website in Illinois, where it published misrepresentations that were seen by plaintiffs. But the administration of defendant's business in Illinois is insufficient to give a nonresident plaintiff a claim under Illinois statutes. *See Crichton*, 576 F.3d at 397. The dissemination of a scheme to defraud from Illinois headquarters is not dispositive either. *Avery*, 216 Ill.2d at 189–90. The complaint alleges that plaintiffs directed their tuition payments to DeVry's office in Illinois and entered into the Enrollment Agreement online. Both of those cross-border actions could weigh in

8

either direction and suggest that the "complaint does not defeat application of Illinois law." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (emphasis omitted). But the nonresident plaintiffs each attended classes on campuses in their respective states of residence, interacted with DeVry representatives in those states, and received the misrepresentations and acted upon them there. With respect to claims by nonresidents, the circumstances of the alleged fraudulent activity did not occur primarily and substantially in Illinois. Robinson, Brown, and Magana may not bring claims under the Illinois Consumer Fraud Act. For the same reason, they may not bring claims under the Illinois Uniform Deceptive Trade Practices Act. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F.Supp.2d 857, 859 (N.D.Ill. 2011) (citing *Avery* and dismissing claim under the Illinois Uniform Deceptive Trade Practices Act based on lack of extraterritorial effect).

Plaintiffs submit that the Illinois Private Business and Vocational Schools Act does have extraterritorial effect, pointing out the following provision:

> the purpose of this Act [is] to provide for the protection, education, and welfare of the citizens of this State; to provide for the education, protection, and welfare of the students of its private business and vocational schools; and to facilitate and promote quality education and responsible, ethical, business practices in each of the private business and vocational schools enrolling students in this State.

105 ILCS 426/5. The reference to students of Illinois's schools is not a clear expression of extraterritoriality—it is sandwiched between intrastate-focused purposes and does not clearly indicate that it meant to include out-of-state students, who attend out-of-state campuses, to receive protection under the act. Nonresident

plaintiffs like Robinson, Brown, and Magana do not fall within the scope of the statute, and their claims are dismissed.

B.     **Proximate Causation and Damages**

DeVry argues that all of the claims must be dismissed because the complaint does not adequately allege a cognizable theory of proximate causation and damages. As DeVry notes, a causal nexus is a requirement under all claims in tort and contract and under consumer fraud statutes. Plaintiffs allege that they were induced to borrow money and pay tuition to DeVry based on DeVry's misrepresented employment statistics. Robinson, Brown, and Magana did not graduate, and the complaint does not allege any efforts by Versetto to find employment after graduation. There is no allegation, then, of damages to employment prospects caused by misrepresentations or any other conduct by DeVry.[2] Plaintiffs identify their injury as the purchase of services they would not have bought had they known that DeVry's employment statistics were inaccurate, and the receipt of services that were worth less than what they were represented to be. This injury, they say, is not based on post-graduation future career prospects. But they identify no other measure of their damages. There is no allegation that the quality of the education received was measurably deficient, other than by virtue of post-graduation employment prospects. Indeed, plaintiffs emphasize that a DeVry executive wrote that the best measure of DeVry's quality was its graduates' success rate. [50] at 2 n.2. Despite that executive's opinion, the near-term employment and

---

[2] The Enrollment Agreement attached to the complaint states that "employment cannot be guaranteed." [35-1] at 8.

10

income rates after graduation do not provide a reliable measure of the value of DeVry's services sufficient to allege damages. The parties' arguments overlap substantially with those presented in a related case, *Petrizzo, et al. v. DeVry Education Group Inc., et al.*, No. 16-cv-09754 (N.D. Ill.), and the opinion on the motion to dismiss in that case addresses those arguments with a longer explanation. In short, plaintiffs' allegation that they would not have purchased an education from DeVry but for the misrepresentations contains an implicit and too speculative notion of educational value based on employment prospects. The absence of a measurable injury caused by defendants' misconduct justifies dismissal of the complaint.

### C. Compliance with Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." That means the complaint must describe the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). The rule applies to allegations of fraud and is implicated whenever a claim is based on fraudulent conduct. *Pirelli*, 631 F.3d at 446–47. But the degree of particularity required under the rule depends on the facts of a case. *Id.*

DeVry argues that the allegations as to Versetto do not meet the requirements of Rule 9(b) because they do not specify the content of the

11

representations she saw and heard. The exhibits attached to the complaint include a variety of claims related to employment rates and income levels, some of which are specific to certain class years or degree programs. But the complaint does not specify which variation or variations Versetto relied upon, and the differences between the representations alleged may be directly relevant to the merits of Versetto's claim. For example, DeVry represented that the 2012 class had a 79% employment rate and $31,847 average income for those who, like Versetto, graduated with an associate's degree in Health Information Technology. [35-3] at 17. The complaint introduces ambiguity by categorizing a wide variety of statements as one representation. It must reduce that ambiguity by identifying which statement or statements are at issue in each plaintiff's claims.[3]

---

[3] DeVry asserts additional arguments for dismissal, but I need not reach them. I do note, however, that plaintiffs' unjust enrichment claim is not adequately pled because it incorporates the allegations that a contract governs the parties' relationship. Alternative claims are permissible, but an unjust enrichment claim must not incorporate a contractual relationship. In addition, the economic loss, or *Moorman*, doctrine prohibits non-fraud tort claims when the damages are purely economic. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982). While the plaintiffs invoke an independent duty to engage in responsible, ethical business practices, the gist of their negligence and conversion claims is about the educational services provided by DeVry pursuant to contract. The relationship here is not akin to intangible services provided by professionals who must follow duties imposed outside of contracts, and therefore, the extracontractual-duty exception to *Moorman*, *see Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137 (1994), does not apply.

## IV. Conclusion

DeVry's motion to dismiss, [41], is granted. The complaint is dismissed without prejudice.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: February 12, 2018